UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA W.,

                            **Plaintiff,**

  vs.                                                 5:22-CV-15
                                                         (MAD)
COMMISSIONER OF SOCIAL SECURITY,

                            **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**OLINSKY LAW GROUP**              **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **HUGH DUN RAPPAPORT, ESQ.**
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On September 8, 2015, Plaintiff Tina W. filed an application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 8-5 at 2-5. Plaintiff's claim was denied on February 8, 2016. *See* Dkt. No. 8-3 at 1-12. On March 6, 2018, Administrative Law Judge ("ALJ") Melissa Hammock determined Plaintiff was not disabled within the meaning of the Social Security Act. *See id.* at 24-40. Plaintiff made a request for a review of the decision, and on December 19, 2019, the Appeals Council vacated the decision. *See id.* at 41-45. After additional hearings before ALJ John P. Ramos, ALJ Ramos issued an unfavorable decision. *See* Dkt. No. 8-2 at 8-33. Plaintiff

1

appealed, and on November 2, 2021, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-6.

On January 6, 2022, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's unfavorable decision. *See* Dkt. No. 1. Plaintiff submitted a brief arguing that the ALJ's Residual Functional Capacity ("RFC") "determination is not supported by substantial evidence because he failed to follow the treating physician rule and provided insufficient reasons for failing to give controlling weight to Plaintiff's treating primary care physician and treating neurologist."[1] Dkt. No. 9 at 3. Defendant argues the contrary. *See* Dkt. No. 11. For the reasons set forth below, the Commissioner's decision denying Plaintiff benefits is affirmed.

## II. BACKGROUND

Plaintiff was born on April 16, 1973. *See* Dkt. No. 8-2 at 42. Plaintiff believes she attended school until the tenth grade. *See id.* Plaintiff previously held various positions at Pure Edge Filtration, including as an industrial cloth sewer and a supervisor. *See id.* at 42-44. In explaining her role and abilities as a sewer, Plaintiff stated, "[w]hen I first started there or when I could do it, I could probably lift maybe 20, 30 pounds, you know, the cloths were awkward, but as I was there, it got worse so I mean people would actually bring stuff to my machine and then I just moved to a supervisor." *Id.* at 46. In explaining her trajectory at the business, Plaintiff testified: "I started out many years ago as a sewer and then I just kind of got bounced around and I was a supervisor. I worked in the office for a while, but I couldn't stay in there because sitting at the desk was killing me so I went back to being floor supervisor." *Id.* at 45.

---

[1] Defendant's and Plaintiff's briefs use the terms "physician" and "provider" interchangeably when referring to those rule-relevant opinions. The Court will do the same.

In a decision dated May 4, 2021, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 12. In his decision, the ALJ found the following: (1) Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019; (2) Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 30, 2014, through her date last insured of December 31, 2019; (3) Plaintiff's severe impairments included degenerative disc disease, osteoarthritis in the left hip, anterior left hip labral tear, multiple sclerosis ("MS"), hallux abductovalgus deformity (bilateral), and Bell's Palsy; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (5) Plaintiff had an RFC to perform less than the full range of light work; (6) Plaintiff was unable to perform any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including housekeeper or cafeteria attendant. *See id.* at 13-25.

## III. DISCUSSION

**A.    Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the

>Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, the Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

B.     **The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2014, the alleged onset date. *See* Dkt. No. 8-2 at 13. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis in the left hip, anterior left hip labral tear, multiple sclerosis, hallux abductovalgus deformity (bilateral), and Bell's Palsy. *See id.* at 14. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 15.

At step four, the ALJ found that Plaintiff had the RFC to

> lift and carry at the light exertional level as defined in 20 CFR 404.1567(b) because while she can lift and carry at the light exertional level as defined in Agency definitions and sit for 6 hours in an 8-hour day, she can only stand for 4 hours in an 8-hour day and walk for 4 hours in an 8-hour day. The [Plaintiff] is able to avoid most workplace hazards but she should not work at unprotected heights or with moving mechanical parts. The [Plaintiff] is limited to performing work that does not involve the use of sharp objects, tools or knives. She cannot drive as part of the job. The [Plaintiff] is unable to manipulate extremely small objects, such as threading a needle. The [Plaintiff] can only perform jobs that require occasional depth perception or near acuity. The [Plaintiff] can occasionally climb ramps and stairs, but never use ladders, ropes or scaffolds. She can occasionally stoop, kneel and crouch. She can never crawl. The [Plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks and regularly attend to a routine and maintain a schedule. The [Plaintiff] can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks and can have frequent, brief interaction with the public. The [Plaintiff] can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work. The [Plaintiff] should work in a position where she is not responsible for the work

> of or required to supervise others. She should work in a position
> with little change in daily work processes or routines.

*Id.* at 18.

In reaching his decision, the ALJ considered a number of medical opinions. First, the ALJ found Regina Lilly, M.D.'s worthy of significant weight. *See* Dkt. No. 8-2 at 22. Second, the ALJ found consultative examiner, Kalyani Ganesh, M.D.'s worthy of some weight. *See id.* Third, the ALJ found treating neurologist Minna Hancock, D.O.'s opinion should be given less weight. *See id.* at 22-23. Fourth, the ALJ found treating primary care provider Joseph Graney, M.D.'s opinion should be given less weight. *See id.* at 23.

In deciding not to afford treating providers Dr. Hancock's and Dr. Graney's opinions controlling weight, ALJ Ramos recounted that

> [t]reating neurologist Minna Hancock, D.O. opined that, because of
> multiple sclerosis, the claimant had a less than sedentary residual
> functional capacity with accompanying mental limitations. She
> would be off-task more than 20% of the workday and absent more
> than four days per month (Exhibit 32F). This is given less weight.
> It is generally a checkbox form and although there are some short,
> narrative responses, it is generally without sufficient reference to
> clinical diagnostic findings to support the conclusions contained
> therein, particularly during the period prior to the date last insured.
> In addition, the record does not show that Dr. Hancock did any
> testing to be able to objectify the length of time the claimant could
> concentrate. As such, estimates as to time off-task and absences are
> speculative at best.

*Id.* at 22-23. Similarly, ALJ Ramos noted that

> [t]reating primary care provider Joseph Graney, M.D. opined that,
> because of the claimant's multiple sclerosis, she had a less than
> sedentary residual functional capacity. She would be off-task more
> than 20% of the workday and absent more than four days per month
> (Exhibit 35F). This is given less weight. It is generally a checkbox
> form and although there are some short, narrative responses, it is
> generally without sufficient reference to clinical diagnostic findings
> to support the conclusions contained therein, particularly during the

> period prior to the date last insured. In addition, the record does not show that Dr. Graney did any testing to be able to objectify the length of time the claimant could concentrate. As such, estimates as to time off-task and absences are speculative at best. Moreover, Dr. Graney admits that he does not treat the claimant for her multiple sclerosis (Exhibit 35F, page 1).

*Id.* at 23. The ALJ then noted

> medical expert Regina Lilly, M.D. determined that the claimant could occasionally lift/carry 50 pounds and frequently lift/carry 20 pounds, sit for 6 hours, stand for 4 hours and walk for 4 hours in an 8-hour day. The claimant could frequently climb, balance, stoop, kneel, crouch and crawl. She could occasionally work at unprotected heights (Exhibit 30F). Because Dr. Lilly has program knowledge, had an opportunity to review the record and her findings are consistent with the totality of the evidence, her opinion is given significant weight. However, viewing the evidence in the light most favorable to the claimant, the undersigned finds that the claimant has somewhat different limitations than those Dr. Lilly identified.

*Id.* at 22.[2]

ALJ Ramos explained that his decisions about opinion testimony were based on inconsistencies with Plaintiff's own statements:

> As for the claimant's statements about the intensity, persistence and limiting effects of her symptoms, they are inconsistent with her activity level. Although the claimant alleges debilitating impairments, the record shows that she retains a range of functioning. For example, she is able to attend to her personal care needs, do laundry and, to some extent, cook, prepare food and do general cleaning. She can drive, do yard work, manage money, socialize, watch television and listen to the radio (Exhibits 5F, page 2; 6F, page 3; and 25F, page 54). Thus, it seems that the claimant is limited, but not disabled, by the symptoms of her impairments. The claimant's activity level is consistent with the ability to perform a

---

[2] Other medical providers also supported the ALJ's RFC decisions. For example, ALJ Ramos' discussion of Dr. Hancock's opinion follows a discussion of Kalyani Ganesh's opinions "assess[ing] the claimant [as] having no gross physical limitations and mild limitations with lifting, carrying or pushing." Dkt. No. 8-2 at 22. The ALJ notes "[t]he claimant's multiple sclerosis was generally controlled with some periods of joint pain or fatigue," and also gives less weight to Dr. Ganesh's assessment because of vagueness. *Id.*

7

> range of light work with postural and environmental restrictions such as are contemplated in the residual functional capacity. Given the claimant's vision loss, it is also appropriate that she have vision limitations such as are contemplated by the residual functional capacity. Because stress causes multiple sclerosis flares, it is prudent that the claimant be further limited to simple work in a low stress environment.

*Id.* at 20. From Plaintiff's own statements and medical evidence, ALJ Ramos found that Plaintiff

> is able to attend to her personal care needs, do laundry and, to some extent, cook, prepare food and do general cleaning. She can drive, do yard work, manage money, socialize, watch television and listen to the radio (Exhibits 5F, page 2; 6F, page 3; and 25F, page 54). Thus, it seems that the claimant is limited, but not disabled, by the symptoms of her impairments. The claimant's activity level is consistent with the ability to perform a range of light work with postural and environmental restrictions such as are contemplated in the residual functional capacity.

*Id.* at 20. Additionally, ALJ Ramos found that

> the record suggests the claimant's multiple sclerosis is generally controlled with medication and she has only acute outbreaks of symptoms. Her most pressing issue is periods of fatigue. Additionally, images of her back suggest milder degeneration. The record supports that these impairments allow her to perform light work. Due to her periods of fatigue, as well as her history of foot pain and her hip pain, she can occasionally climb ramps and stairs, but never use ladders, ropes, or scaffolds. Her hip pain restricts her to occasionally stoop, kneel, and crouch, and no crawling. Due to her history of falling and reports of fatigue, she cannot have exposure to unprotected heights, moving mechanical parts sharp objects, tools or knives. She cannot drive as part of her job. As the claimant's multiple sclerosis symptoms intensify with stress and emotional setting she is limited to simple work in a low stress environment such as is contemplated by the residual functional capacity.

*Id.* at 22. Finally, relying on the testimony of a vocational expert, the ALJ found that while the

Plaintiff was not capable of performing past work, she was capable of performing other work in

the national economy.  *See id.* at 23-24.  Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, during the relevant time period.  *See id.* at 25.

**B.     Analysis**

Plaintiff argues that ALJ Ramos erred in failing to give the opinions of Dr. Hancock and Dr. Graney, Plaintiff's treating neurologist and primary care physician, respectively, controlling weight.  Plaintiff argues that the ALJ improperly discounted their opinions because they filled out "checkbox forms."  *See* Dkt. No. 9 at 3, 15.  Second, Plaintiff argues that the ALJ discounted these physicians because their opinions were based on subjective rather than objective testing.  *See id.* at 16.  Plaintiff argues "[w]hatever the ALJ's reasoning was to link concentration to attendance is not apparent from his decision."  *Id.*  Plaintiff further argues that "[t]here can be no argument here that he addressed the required factors [of weighing the physicians' opinions about her disability] as he blatantly fails to do so in his written opinion."  *Id.* at 17.  In opposition, Defendant argues that the ALJ "properly evaluated the medical opinions in the record" by "rel[ying] upon permissible factors in evaluating the opinion evidence and Plaintiff failed to point to any objective findings from the doctors or other providers to support the assessed limitations," and that the ALJ's decision is supported by substantial evidence.  Dkt. No. 11 at 1.

For claims filed prior to March 27, 2017, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  However, the opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  In

9

that situation, "'the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see also* 20 C.F.R. § 404.1527(c). The ALJ must then "'comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "The failure to provide '"good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quotation omitted).

The record contradicted Dr. Hancock's and Dr. Graney's opinions as to Plaintiff's abilities and physical complaints. ALJ Ramos cited Dr. Kalyani Ganesh's opinions "assess[ing] the claimant [as] having no gross physical limitations and mild limitations with lifting, carrying or pushing." Dkt. No. 8-2 at 22. Dr. Lilly found Plaintiff could stand and sit for the majority of an eight-hour workday and could also lift weight. *See id.* In addition to these contradictions in the record, ALJ Ramos explained he gave these treating providers' opinions less controlling weight as they were not based on objective testing and were "without sufficient reference to clinical diagnostic findings." *See id.* at 23.

Dr. Hancock's and Dr. Graney's opinions about limitations caused by Plaintiff's MS were contradicted by other evidence in the record. The record tended to show that Plaintiff's MS was stable on medication without major increases in symptoms. ALJ Ramos noted that based on Dr. Ganesh's opinion and other records, "[t]he claimant's multiple sclerosis was generally controlled with some periods of joint pain or fatigue." *See id.* at 22. ALJ Ramos adopted criteria and

10

allowances for the type of work Plaintiff could do, specifying she needed a low stress job and limiting the types of manual labor. *See id.* at 20.

"The ability to maintain a regular schedule falls under the category of concentration and persistence and thus the ALJ can look to other opinions that examine that issue." *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 155-156 (N.D.N.Y. 2021) (internal citations omitted). Dr. Dennis M. Noia described Plaintiff as "hav[ing] mild limitations maintaining attention and concentration for tasks. She appears to have no limitations regarding her ability to attend to a routine and maintain a schedule."[3] Dkt. No. 8-7 at 93.

These contradictions helped inform ALJ Ramos's RFC finding. In further noting why he credited certain providers more weight than others for the RFC determination, ALJ Ramos stated that the "residual functional capacity assessment [] is supported by the opinion of Regina Lilly, M.D.; the objective medical evidence and the claimant's activity level, all of which is as above stated." Dkt. No. 8-2 at 23.

ALJ Ramos also considered the required factors for Dr. Hancock. ALJ Ramos noted that Dr. Hancock was the treating neurologist, that there was a lack of reference to clinical diagnostic testing or objective testing. *See id.* at 22-23. As such, ALJ noted that the record did not support Dr. Hancock's opinions as to the RFC. *See id.*

ALJ Ramos also addressed the factors for Dr. Graney, noting he was the primary care provider, but not a specialist or treatment provider for Plaintiff's MS. *See id.* at 23. ALJ Ramos noted Dr. Graney similarly lacked objective testing and narrative information as to how he reached his opinions. *See id.*

---

[3] Other treating providers concurred that there were only mild restrictions for concentration and in daily living. *See, e.g.*, Dkt. No. 8-2 at 14.

As such, the Court finds that ALJ Ramos sufficiently considered the relevant factors in crediting the opinion evidence. *See Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013) (Courts "require no such slavish recitation of each and every [20 C.F.R. § 404.1527(c)] factor where the ALJ's reasoning and adherence to the regulation are clear").

Additionally, there is substantial evidence to support the ALJ's findings. The ALJ's weighing of opinion testimony followed an extensive discussion of the record, including evidence from previous hearings and medical records. *See* Dkt. No. 8-2 at 19-22. ALJ Ramos discussed the history of Plaintiff's symptoms, including only moderate increases in symptoms: "Throughout 2016, the claimant's symptoms were relatively stable and her medications were controlling her symptoms (Exhibit 14F, page 8). The record did not suggest any significant follow up treatment for her multiple sclerosis. This also suggests her multiple sclerosis was under control and not causing significant symptoms." *Id.* at 21. The record further supported the fact that many of Plaintiff's symptoms are well-managed with medication, including her fatigue. *See id.* at 20-21. It is noted that Plaintiff's multiple sclerosis symptoms increased in 2017, and she had decreased motor strength in her arm, while she reported medication helped her fatigue. However, the treatment for MS was sporadic and so the ALJ found "[o]verall, this treatment suggests only some acute increase in symptoms and that her symptoms were not significantly affecting her." *Id.* Thus, ALJ Ramos provided "good reasons" for his findings and remand is neither required nor appropriate.

It is not the Court's function to reweigh the evidence on appeal, only to "decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013). Given the substantial evidence of Plaintiff's ability to participate to some extent in the workforce, ALJ Ramos did not err in finding that the opinions of Dr. Hancock and

Dr. Graney should be afforded only some, and not controlling, weight.

Even assuming the ALJ made an error in discussing the required factors when he decided not to afford the treating physicians' opinions controlling weight, the Court finds that the error was harmless. Where an ALJ has failed to explicitly apply all of the relevant factors when assigning weight to a medical source, such error is harmless if "'a searching review of the record' assures [the court] 'that the substance of the treating physician rule was not traversed.'" *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). Here, a "searching review of the record" assures the Court that the ALJ's determination not to afford the treating physicians' opinions controlling weight was supported by substantial evidence.

Providers often noted she had (1) no signs of acute or apparent distress, *see*, *e.g.*, Dkt. No. 8-7 at 277, 303, 308, 312, 316, 325, 328, 329, 336, 344, 350, 354, 358, 364, 372, 379, 385, 390, 394, 400, 408, 411, 414, 418, (2) clear speech, *see*, *e.g.*, *id.* at 295, 328, 330, 386, 390, 408, 423, 459-60, (3) generally good motor skills with minor/mild changes, *see*, *e.g.*, *id.* at 303, 328, 394, 403, 414, 423, 435, 441, 460, and (4) normal or slightly slow gait, with some intermittent unsteadiness. *See*, *e.g.*, *id.* at 289, 308, 397, 423, 442, 460. Testing via an MRI in 2020 noted only "mild stable cervical spine degenerative changes." *Id.* at 465. The record also indicated her symptoms were relatively stable and controlled by medication. *See*, *e.g.*, *id.* at 24, 231, 296. Plaintiff herself stated she has the ability to drive, socialize, do chores, and listen to the radio. *See* Dkt. No. 8-2 at 20. Even after a surgery in 2018, Plaintiff told a doctor "things have been going well," and the provider noted that "[s]he's not had any increased pain." Dkt. No. 8-7 at 310. Following her acute MS symptoms in 2017, a note from Dr. Graney in 2018 indicated that "[t]he patient generally appears well. No distress … She has some tenderness … over the lumbar spine. No paraspinal tenderness … Strength 5/5 in the lower extremities. Reflexes 2+ and symmetric.

13

Right elbow has tenderness over the medial epicondyle … Range of motion of the elbow is normal," and that her MS symptoms were "[d]oing well at this time." Dkt. No. 8-8 at 11. ALJ Ramos did not simply adopt one medical provider's opinion, but took the totality of the evidence into account, including the nature of MS and its symptoms, in creating this RFC. Accordingly, based on a searching review of the record, the Court concludes that substantial evidence supports the ALJ's RFC determination. Taken together, this record evidence provides substantial support for the ALJ's determination to give only some weight to the treating physicians' opinions. *Cf. Kennedy v. Astrue*, 343 Fed. Appx. 719, 721 (2d Cir. 2009).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 10, 2023
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge